I think he may be seated again and good morning and welcome. This is the time set for oral argument in the case of. State of California versus United States of America, American free enterprise chamber of commerce and Western states trucking association and construction industry, industry, air quality coalition, the council's ready. You may come forward. Thank you, your honors. And may it please the court, Michael Buschbacher for the joint interveners, national trade groups representing the auto industry, the liquid fuels industry, auto dealers, fuel retailers and large fleet purchasers. I'd like to reserve five minutes for rebuttal. I'm here with counsel Theodore Haji Antich, who represents Wista and Kayak. He's reserved five minutes to discuss those groups specific interests for well over a decade. Automakers, liquid fuels interests, EPA, California and others have wrangled about that state's authority to force vehicle electrification using California's special treatment under the Clean Air Act. Just over a year ago, Congress stepped in and largely ended that debate through new legislation under the Congressional Review Act that reinstates federal preemption of three California regulations under Section 209A of the Clean Air Act. California and 10 other states sued and we promptly moved to intervene. Let me ask you a question. Your reply brief says that Section 209A protects all entities selling and buying new motor vehicles. And so help us kind of draw the line because I assume your position is not that every consumer in America who buys a vehicle should be an intervener in this case. Is that right? Yeah, I think so. This court has said and the Supreme Court has said that the interest has to be significantly protectable. So automakers, auto dealers, the folks who make the fuels that power those cars and trucks, those folks have a significant interest here. Someone who maybe someday wants to buy a car, it's not the same. That said, this court has taken a very broad view of intervention, including in cases where individuals, often as members of an environmental group, have been allowed to intervene based on their personal interests in things like wildlife and habitat. That's fine. It's just those who want to buy cars. Why aren't the fuel producers too far removed? Because there's a lot of steps to actually get to finding that they're actually impacted. No, I don't think there are a lot of steps at all. You can't drive a car off the lot unless there's some fuel in the tank if it's a conventional vehicle. And the Supreme Court's decision in Diamond Alternative just last year said that it's a matter of common sense economics to see the impact on fuel producers. And that makes a lot of sense. Actually, the object of California's regulation here is the— It seems like, though, you need a couple of steps. You need that the waiver gets reinstated, that California is going to regulate the new vehicle emissions, that the zero emission car sales are going to go up so the demand for oil is going to go down. It does seem like there are a few links in the chain, no? So the first part of—the first two steps are California wins the case and it gets what it wants. So I don't think there's any sort of inferential chain there. Assuming California wins, right, that's the question of whether their victory would impede or impair our interests, which this Court has said is a broad and flexible inquiry. That's not going to maybe decrease the sales of conventional vehicles. That's what these regulations require. And California has said that it wishes to enforce them. Indeed, it has threatened retroactive enforcement against the auto industry if it prevails in this case. So, again, you can't drive a vehicle without fuel in the tank, and this is very—the argument I think you're making is very similar to the argument that was in Diamond Alternative about— Where do you think the line is that you say the fuel producers are in but a consumer of the vehicle is out? So where's the sort of the marginal case in your view, if you can imagine a more marginal? Yeah. So, well, for one thing, I'll point out that California and the district court seem to take the position that to avoid that line-drawing problem, we're just not going to let anyone intervene, and I think that's a totally wrong way of reading Rule 24. The distinction about what is significantly protectable, this Court has said, is kind of—it's a little bit difficult to parse out, and I think that's true. I think it's got to be something where if you could go to court to vindicate your rights, that's, I think, what significantly protectable has got to mean. If you can go to court and claim the benefit of this preemption provision, then I think you do have a significantly protectable interest. This Court has taken the position that standing is not necessary to intervene in every case, but I do think it's relevant, and other courts like the D.C. Circuit have said correctly, in my view, that if you can show standing, in other words, if you can get into court, then that's a fortiori enough to show that you have a significantly protectable interest. And, you know, I think that makes a lot of sense. I mean, the direct objects of the regulation are here. We've got—we don't have a bunch of individuals. We have the trade organizations that represent all of these industries, and there are billions of dollars at stake, and that, if any interest is protectable, that is certainly significant. So one of the things that the district court got wrong in framing the interest is it didn't look at any of this. Instead, it looked at the arguments that California was making in congressional procedure and said that we didn't have some abstract interest in that, and that's wrong under the text of Rule 24a. Rule 24a says to look at the transaction, and the transaction here—the transactions here are the resolutions, and those resolutions aren't merely something that provide us a benefit. They're also new legislation. And so the way they work is they repeal these waivers of preemption that California had obtained from EPA previously, and by doing that, they make those rules, those state rules, again preempted by Section 209a of the Clean Air Act. And the Supreme Court has said that that protects the right to buy and sell vehicles in the Energy Marketing Association—or, I'm sorry, the Engine Manufacturers Association case, and there has been litigation for years involving the auto industry, the fuels industry, and there's never been any serious question that those groups should have access to court to at least test the validity of what Congress or EPA has done. So let's say we agreed with you on the car makers and the car dealers under 209, and so then the Chamber of Commerce would also fall into that category because they include car makers and car dealers. And purchasers, yes. But the Chamber also includes the fuel producers, the convenience stores, the corn growers who—let's say we don't agree with you that they're covered under 209. What would the—why wouldn't the Chamber's participation adequately represent the interest of the corn growers, the convenience store owners, and the two fuel producers? So two points on that. One is the American Free Enterprise Chamber of Commerce does not have the automakers as members. It does not have all of the—there are some members who are in the fuel industry, but it's not the same swath of fuel interests that are represented by— Okay, wait, wait, wait, wait. Then maybe the Chamber doesn't get in either then. The Chamber— So you're saying the Alliance for Automotive Innovation, they're not members of the American Free Enterprise Chamber of Commerce? They are not. Oh, okay. What about the National Automobile Dealers Association? Are they members of the American Free Enterprise Chamber of Commerce? No, they're not. Oh, okay. So then if we were to say under 209 the Alliance for Automotive Innovation and National Automobile Dealers Association would have a right to intervene, that would not extend to the Chamber of Commerce because they're not members? Not based on membership. I do think it would because of the interest that AMFRE does represent. So the American Free Enterprise Chamber has members who are dealers, so that brings them into the same bucket, same kinds of interests. But dealers who are not members of NADA? I don't know if they're members of NADA or not. There's an RV dealer, Demartini, that's a member that provided a declaration. I'm happy to run that down for you, but the point about adequacy is about comparing two existing parties. That's what the rule says. And none of these groups are currently parties of any sort in this litigation. So you're saying AMFRE should be granted intervention as of right basically because its members include dealers, motor vehicle dealers? That's one basis for yes. They also include folks who make ethanol that go into the fuel, so they have fuel producer members, and they have folks who are large fleet purchasers who buy large quantities of vehicles who are negatively impacted by these electric vehicle mandates. So why wouldn't they represent the interest of the fuel producers, corn growers, and the convenience stores? I think if AMFRE were allowed in as a member and then, say, these other groups came in later and tried to intervene, that would be a situation where the adequacy question could come up, but that's not the situation we have here. I know, but answer the adequacy question. Why wouldn't AMFRE Enterprise Chamber of Commerce not adequately represent the interest of the two fuel producers, corn growers, and convenience stores? So AMFRE does not, as far as I'm aware, represent upstream fuel manufacturers or oil majors, so that's a distinction. I think those interests, I'm not saying that they wouldn't necessarily be adequately represented. I don't think there's any dispute. I mean, there's a reason why I'm here arguing for all of them because I think all of our interests are aligned, and we all move to intervene at roughly the same time. So this is different than cases like Arakaki where you had a group that had intervened. You're saying the fuel producers that are represented by AMFRE are different than the fuel producers in American Petroleum Institute and American Fuel and Petrochemical Manufacturers? Yes. And again, I don't see any practical reason to make distinctions here. But what difference in interest would they have depending on where they are in the fuel production chain? Why would that cause any difference in their interest in this case? I'm not sure that it would, but there's no reason to favor one particular group of interveners or potential interveners over others at this junction. And this court has said, going back to Andres, quoting that famous— Well, it's adequacy of representation is the question, right? Of existing parties. My premise here was assuming automakers and autodealers have a right to intervene under 209, right? And if we put AMFRE in there because they represent autodealers, then why wouldn't that adequately represent any of the interests of the corn growers, convenience stores, and fuel petroleum? I'm not saying that they wouldn't be able to represent some of those interests, but there's certainly not a complete identicality of interest, which is what this court said in Arakaki is the baseline question, and it said that the test for adequacy is minimal. And again, it would be an interesting question, and it's a question similar to what came up in Arakaki where you had a Native Hawaiian who wanted to intervene in a case where a group that represents Native Hawaiians had already intervened. And in that case, the court said that that was significant. Here, however, no one has been allowed to intervene, and so I think that's just not the issue that's before the court. I take your hypothetical. I can imagine a case like that. It's just not this one, and I don't think one group of interveners should be privileged over any of the others here. I don't think it would cause any practical inconvenience either if all of us were allowed in. I want to say a few points about adequate representation. So the federal government does not adequately represent our interests. It regulates our interests, and the government is also not making the arguments that we think they should be making at the motion to dismiss phase. In fact, I think they said on page two of their letter to this court that it would be inappropriate to have those arguments before the court. We disagree. Those arguments matter, and the question of whether waivers are rules under the Congressional Review Act is the linchpin of California's entire case. So that argument is very important under cases like Western Watersheds Project in Berg. I think that easily satisfies the test for showing why the government's not adequate. The other thing that I'll point out on this is there are really two points that you need to look at when considering adequacy. One, as I mentioned before, is does the existing party represent the interests of the proposed intervener? And then second, if they do, is it adequate? And so the questions about litigation strategy and those sort of things all go to adequately. Are they doing a good enough job, or do they represent those interests in a way that's not diluted by other considerations? When it comes to that first point, though, this court has said in cases like Forest Conservation Council that what matters is whether the federal government is charged to represent the interests of the proposed intervener. Again, the federal government does not represent the auto industry. The federal government does not represent fuel manufacturers. It regulates them, and that's different from cases like Geithner or cases like the city of Los Angeles case where there were individuals who were as individuals within the sort of parents patriae representation responsibility of the federal government. So that distinction, I think, is very important. Did you want to reserve your time? Yes, Your Honor. Thank you. Thank you. Good morning. Theodore Hadjiantis for Appellant's Western States Trucking Association. I'll refer to them as WSTA. And also for Construction Industry Air Quality Coalition. I'll refer to them as CAIAC. I'm joined today by my colleagues, Eric Haggis and Laura Beth Latimer. And also in the court this morning, Lee Brown, Executive Director of WSTA, and William Aboody, President of Oakland Port Services, a member of WSTA. May it please the court. Mr. Aboody's declaration states that if the ACT rule goes back into effect, Oakland Port Services purchase costs per truck will increase by approximately $300,000. And the company will not be able to continue running its business profitably. And our brief demonstrates that if California receives the relief it requested, the ACT rule will indeed go back into effect. And Oakland Port Services will thereby automatically suffer those injuries by impeding, as a practical matter, its protectable economic interests. The contents of the declaration are unrebutted. Under this court's decision in Center for Biological Diversity, a district court is required to accept as true the non-conclusory factual allegations. You make the argument that because you have a lawsuit against the federal government in a different court on a related matter, that that rebuts the presumption of adequacy of representation by the federal government. And in the reply brief, you don't cite any authority for that proposition. In the opening brief, you do cite a First Circuit case that seems not on point. That case isn't referred to again in the reply brief. Do you have any legal support for that proposition? Your Honor, I think a little bit of background here is an important preface to answering your question. We've had for a very long time a challenge in the D.C. Circuit to the ACT waiver grant by EPA. That challenge has been put in abeyance pending the results of this case. So consequently, the briefing is stopped. And now we're here talking about the validity of the Congressional Review Act. But for this case, we would have been able to finalize the briefing, go to oral argument, and determine who wins that case. Because of this case, we're not able to do that. So this case has already impacted our litigation posture in the other cases. Do you have any cases that you can point us to where we said that there was a right to intervention because of that kind of litigation? I mean, it can't be the case that just filing a lawsuit in another circuit then gives you a right to intervene in a case. So I share Judge Koh's question. Well, I'm not going to be able to point to a specific case there. But I think as a matter of practicality, and of course, under 24A, the issue is what are the practical impacts on the results of this litigation. If California receives the requested relief, the practical impacts are that Mr. Abboudi will automatically be required to pay $300,000 extra for the truck. There's going to be a period of time between this court's decision and the reconvening of the D.C. Circuit case. During that period of time, it's going to be about a year and a half, maybe two years, because we're still in briefing as opposed to oral argument. Those specific injuries are going to happen. So as a practical matter, under the Rule 24A case law of this circuit, as a practical matter, that is going to be the injury. And this court's decision is actually in three binding cases, Alicell Water, Citizens for Balanced Use, and Lockyard, which deal with the confluence of protectable economic interests and adequacy of representation. Those three cases required the district court to grant WSTA's motion to intervene as of right, and accordingly, this court should reverse. And that's because both the practical impact and the inadequacy of representation have been shown. I'm happy to address any additional questions that you may have and reserve the remainder of my five minutes for rebuttal. Okay. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Cecilia Siegel for the Plaintiff States. At its core, the case below involves a dispute between the federal government, excuse me, and 11 plaintiff states over the United States' unprecedented attempt to use the Congressional Review Act to nullify state laws. The various automakers, corn growers, truck drivers, and gas station owners seeking to intervene here haven't established a protectable interest that is related to those issues or that would be impeded by their resolution. So as to the automakers, they can enforce Section 209 by seeking prospective relief. They can raise preemption of state regs on new vehicles as affirmative defenses. I mean, why is that not enough to give them a protectable interest? Yes, Your Honor, a few responses there. I think, first, the focus of what was before the district court was really an asserted interest in the economic stakes they had and the lawfulness of EPA's decision to issue the waivers in the first place and not this broader preemption interest that they've been focusing on in appeal. And even though this Court's review is de novo, that's still not licensed to the appellants to be shifting their arguments to see what sticks. And I think, regardless, there does need to be a limit, as this Court has alluded to in questioning my opposing counsel, and they haven't been able to draw that line. If you equate it to a cause of action, there's no limit there. And I think under Rule 24, there is a balance. You know, as this Court, as the panel in Akina v. Hawaii referenced, there's two potentially conflicting goals. On the one hand, trying to achieve judicial economy when the interests truly are related and resolving those interests in one suit, versus preventing the case from becoming unendingly complicated and burdened. And so I think here, on the Section 209 theory and the cause of actions that may be available, there's nothing to distinguish that from all of the movements, all 20 of the movements here on appeal. And I would point the Court here to WISTA's opening brief, where they frame the inquiry as whether operators of heavy-duty trucks can intervene in this case. And that's thousands, if not millions, of individuals who would have that interest. But if this Court— But why wouldn't we at least draw the line at car makers and car dealers? Even if we say, okay, we don't want to talk about anyone else downstream, but let's at least let those two in. And it could be that they would have a sufficient interest under Section 209. It's not a zero-sum game. It may be that it would be appropriate to remand to the District Court to consider where that line might be, with the benefit of the briefing in front of this Court and this panel's decision. But even if they did have an interest under Section 209, they still fail on the impairment and adequate representation prongs. So interest is just one piece— On which prongs? I'm sorry. On the impairment and adequate representation prongs. So this interest question is just one piece of the puzzle. And the case law is clear that their failure to meet any single— one of the four factors under Rule 24.8.2 would be fatal to their application. But the potential— It seems like the potential intervenors' waivers as rules argument might be colorable. And do you have a view why the federal defendants did not raise that argument in its initial—or in its motion to dismiss? Yes. Well, the federal government answered that, both in front of the District Court and in a letter to this Court, stating that they had made a litigation choice not to raise that particular argument in their motion to dismiss, but that they were not abandoning or conceding the argument. And that's what distinguishes this case from the Western Watersheds Project v. Holland case that the joint intervenors rely on. Their summary judgment represented the final merits phase of the case. So the existing party's failure to raise colorable arguments at that point resulted in forfeiture of the arguments. And that's simply not the case here. And that one argument aside, everything to date about the federal government's defense has shown that they are zealously defending the congressional resolutions. Well, they haven't abandoned that argument, but we also don't know that they will actually affirmatively make the argument later in litigation. And the proposed intervenors say, well, that is an argument they want to make. So why—I mean, that seems sufficient under our case law. Well, but the case law does require more than mere speculation. And so I'd point the court to kind of the contrast between the Lockyer and Citizens for Balanced Use cases that WSTA and the AMFRI movements have been relying on versus the court's cases in Perry v. Proposition 8 official proponents and Eric Kaki v. Cayetano. So on the one hand, there's the cases they rely on in which the federal government had already taken certain actions that showed that their representation was inadequate. In Lockyer, the federal government had conceded construction of the challenged amendment that potentially eviscerated the interests that the movements were trying to assert. In Citizens for Balanced Use, the government was actively trying to overturn the district court decision that required them to issue the rule that they were supposed to be defending to begin with. In contrast, in Perry and in Eric Kaki, the movements were kind of in similar postures here where they were positing that certain arguments might not be made further down the line. And the courts there held that that wasn't sufficient, absent any sort of evidence or that either the argument would be a necessary one that the government was not able and willing to make or that there was any conflict that would have prevented the government from being able to make that argument. And those facts simply aren't present here. I mean, the waivers are rules argument is a purely legal argument involving a federal agency on a question of federal procedure. There's no question that the federal government is entirely capable of making that argument. It's not unique to any sort of expertise offered by the proposed interveners here. And in any event, they can represent those views as amici as they did at the motion to dismiss stage. I think it's also important to note that joint interveners themselves acknowledge that that argument isn't a necessary element of the case. They may prefer it, but at page 9, I believe, of their joint reply brief, they acknowledge that... Sorry, of page 31, that it's an alternate avenue for resolving or simplifying the issues, simplifying the case. So at bottom, this isn't a fundamental difference in approach to the case and the same ultimate objective that they share with the federal government, which is to defend the constitutionality of the congressional resolutions. And again, as this court has twice made clear, that presumption that arises is nowhere more applicable, perhaps, than in a case like this one, where the Department of Justice has deployed its formidable resources to defend the constitutionality of the resolutions. And so the fact that they may prefer to make this argument really just comes down to a question of style and degree, not the ultimate bottom line. And again, I'd point the court back to the Perry case on that point, which no proposed intervener has attempted to distinguish at all. Let me ask you, if you seem to concede that for carmakers and car dealers, they have a good 209 argument, so would that also extend to the Chamber of Commerce that includes car dealers or not? No, Your Honor. I think the case law that they rely on there really, and our own case, MIMA 1, really reflects that Section 209 is meant to protect the manufacturers and not everyone who might otherwise have a cause of action under 209 or Section 307, which is the other source of law that they point to under the Clean Air Act. Right, but I thought earlier you just conceded that dealers would also have a good argument under 209. That's the way my question was phrased, and you seem to agree. It could be that manufacturers and dealers might because it's prior to the point of sale. Okay, then I don't understand your position. Earlier you conceded that for carmakers and car dealers, they have a good argument under 209, and so if the Chamber of Commerce includes car dealers, then I don't understand why they wouldn't equally have a good argument under 209. I see. I apologize, Your Honor. I misunderstood your question. They might still have the same interest argument, but going back to the questions you were asking opposing counsel earlier, I do think there is kind of a sequencing that may happen, as the Supreme Court actually recognized in the Berger case that they cite, where the district court, if on remand, is sorting through these interests, might determine that it could grant some of those movements intervention and then determine that in doing so, the interest of any remaining intervenors, and that's the language used in Berger, any remaining intervenors' interests may be adequately represented at that point. So, if the carmakers and dealers have a good basis under 209 to intervene, why shouldn't the other entities involved here be given more consideration or due consideration under permissive intervention? Yes, Your Honor. Well, there, the district court does have a significant amount of discretion, and on this question of whether there's a burden or delay by allowing here 20 different entities permission to intervene in the case, that alone can be a reason to deny. But it seems to me the district court, when it was reviewing permissive intervention, reviewed everyone, kind of this umbrella of review for everybody, and then included adequate representation, which I think is the consideration under intervention as a right. So, I'm trying to figure out what do we do with that in light of how the district court made its assessment in denying permissive intervention to, well, in this case, to everyone as well. A few responses, Your Honor. First, this court has made clear in both Spangler and Perry that adequate, sorry, yes, Perry, that adequate representation can be a factor justifying denial even under permissive intervention, so there can be overlap there. But burden or delay is a separate factor that could justify denial as this court held in Montgomery v. Rumsfeld, where the court found that it was well within the district court's discretion to determine that allowing an additional 13 plaintiffs into the case would be unduly burdensome, and here we have 20. In front of the district court, it was 21 on the defendant's side. The fact that the court then decided to deny intervention as to everybody, including an unopposed motion on the plaintiff's side, I think just shows that the district court really did determine that the existing parties in the case can adequately represent the issues that are presented here, which is really this unprecedented federal process that unfolded and how it impacted states' rights. And it was just an even-handed decision, not putting any one group of intervener over another and deciding, I'm not going to let anyone in, I'm going to give them an opportunity to participate as amici, which this court has repeatedly found can be sufficient, and then rest on that adequate representation ground. And turning back to that, again, that's an independent basis on which this court can affirm. But there's also case law that says that amica status is not sufficient, right, because they don't have a right to appeal, they can't formally raise motions and arguments. That's right, Your Honor. But nowhere have they articulated why party status is necessary for them. They've articulated this one legal argument that they want to make, that they did make as amici. In the Yim case that they rely on, the court recognized that, of course, the district court can consider those arguments if it thinks it would be helpful to them. The plaintiff states responded to those arguments in our brief opposing motion, the motion to dismiss. Several groups of amici also responded to the argument. So the issues are before the district court. I agree that it's not required to address those issues, but it certainly can. And if it becomes apparent down the line that the federal government really isn't going to be making that argument, that may be a reason for them to renew their motions to intervene at that point. But that's just not where we're at right now. On your forfeiture argument, it looks like at least for the dealers, makers of cars in the chamber, they did cite 209 as the source of their legally protected interest in their motions to intervene. So why isn't that enough to raise the issue? But in doing so, really overwhelmingly framed it, and this is basically verbatim language from Amfrey's motion, is that it was a 209 and a 307 interest in the economic interest in the lawfulness of the waiver decisions, not stemming from the resolutions themselves. And that all just underscores the fact that those interests aren't sufficiently related to the issues that are being argued in the case below. And even if they were, wouldn't be impaired by the disposition here because they can still make those arguments in the litigation that's already pending, challenging whether those waivers were lawfully issued to begin with. And this court, in several cases, City of LA, the Akina v. Hawaii case, among many others, has repeatedly said that an opportunity to protect a movement's interest in an alternate forum can be a sufficient basis to deny. Even the Lockyer case there said that the fact that an interest may be affected doesn't necessarily mean that it's impaired if there are other means to protect the asserted interest. I'd like to move back to some of the adequate representation arguments that have been made. They argue that they have diverging interests because some of the movements represented are regulated by the California standards or otherwise just have interests that are more economic in nature than the federal government. That fact alone can't be enough to rebut the presumption of adequate representation that all the parties agree applies here because otherwise it would just completely upend that presumption and would often be true when there's a private party moving alongside the federal government. Again, the presumption that applies here is whether or not the federal government and the proposed intervenors share the same ultimate objective. They do. It is defending the constitutionality of the resolutions. The fact that they've alleged different interests hasn't materialized into any sort of significant dispute or approach to the case as this court has found, I believe, in LULAC as well. Let me ask you a question. On the car makers and the dealers and maybe the Chamber of Commerce, if we were to find that they had a legally protectable interest under 209, why wouldn't we just outright reverse? You're saying, no, send it back to the district court and let the district court make that decision and just reverse on the one issue that they didn't have a legally protected interest? Why would we do that? Well, to be clear, the court could affirm if it agrees on the adequate representation prong, even if it disagrees and finds that there is an interest under Section 209. Let's assume we disagree on that. Yes, Your Honor. This court certainly could decide which of the movements, if any, are entitled to intervene based on interest or inadequate representation. Remand may be appropriate just because there is a bit of a line drawing test. And again, this wasn't the focus of what was presented to the district court. So it would give the district court the opportunity to sort through all of that, potentially sequence it as Berger contemplated, potentially apply case management conditions if it is allowing... And is that sequencing more in the case of permissive intervention or it's also in intervention as of right? I think it could be both. These were five separate motions presented to the district court that it ultimately ruled on in the same order. But the district court has inherent authority to manage its own docket. So it could treat those motions independently and decide after granting one that it would deny the rest. Well, even the intervention as of right has as an element, are your interests adequately represented? So you're saying in that determination, if you did it sequentially, you could decide, okay, once automakers and auto dealers are in, do you really need the chamber? That's right. The remand may also be appropriate because it may address any timing concerns that might come up, just given that the district court is poised to rule on the pending motion to dismiss, which hopefully doesn't, but could result in a dismissal of the case and then a subsequent appeal. So it would give the district court the ability to determine which parties really should be in the case before any potential appeal. Just a few notes on the impairment prongs,  The proposed intervenors, again, effectively admit that the economic interests that they're seeking to vindicate here overlap with the same interests that they're trying to vindicate in the separate waiver litigation that is pending. They cite the automatic effects that may spring up if plaintiff states are ultimately successful in the suit below. But again, if anything, that just underscores that the consequences they're asserting here are attenuated and just a stake in the outcome of the case, which this court has held isn't sufficient under the Green and Alisal cases. And if they are worried about these interim effects that may rise up, they can always seek a stay of the waiver decisions to prevent those alleged effects from occurring. What's your view on whether the chamber has different interests than the car makers and car dealers? I don't think that they do, Your Honor, and I think counsel admitted as much. He said that their interests are aligned. And again, they really focus on trying to parse what interests may be different among them. I don't think they were able to even articulate any, but that's not the question. The question is, do they share the same ultimate objective? Even putting aside the federal government, all the proposed interveners here share the same ultimate objective. All of them want to make the same argument, our waiver's rules. The rest of their proposed motions to dismiss of those who filed one almost entirely overlap, including with the federal government's brief, with the exception of that one argument that the federal government has simply chosen not to make yet. So again, I do think this is a scenario where all these proposed interveners are trying to jump into the case, and that just may not be warranted, given what they have shown on the record before the district court. Another point on adequate representation, your honors, the joint interveners pointed to the possibility that the federal government might someday abandon its defense. Again, that can't be enough on its own, or else it would always offend the adequate presumption that arises in cases such as this one. And what distinguishes Sagebrush on that point is that there, the change in administration had already occurred. And so, the change in administration  or the staffing change that resulted was that the Secretary of Interior had previously been head of the foundation that was representing the plaintiffs in that very same case. That is obviously distinct from what we have here. And as we explained in our brief, the fact that EPA has reversed course on a few of its waivers in the past is not at all probative of the question here as to whether the Department of Justice is going to be adequately defending the resolutions on constitutional grounds. That's where 28 U.S.C. 530D comes in. If the Department of Justice did choose to abandon at that point, it would have to submit a report to Congress, which would then have the opportunity to intervene or seek to intervene, which again just echoes this presumption that's arisen here, that the federal government is defending the resolutions on constitutional grounds. And again, just echoing that, so far, they have been zealously defending the resolutions. I mean, their motion to dismiss didn't just focus on jurisdictional arguments. It also raised several arguments that plaintiff states failed to state a claim. And again, the government went so far as to write a letter to this court explicitly asserting that the waivers are rules argument was not conceded and was just a litigation choice that they did not make at the motion to dismiss stage. I see, Your Honors, that my time is up. Unless the panel has any further questions, plaintiff states would respectfully request that this court affirm the portion of the district court's ruling denying intervention as of right and dismiss for lack of jurisdiction the portion of the district court's ruling denying permissive intervention. Thank you. Thank you. Thank you, Your Honors. Just a few quick points. One, on how complicated things would be, that seems to be the argument that California has made, is that they think more process is necessary on a remand. That is completely contrary to our view. We think that this should just be resolved now. But let's say if we find intervention as of right as to carmakers and car dealers, as far as the chamber, to look at intervention as of right, still a fourth element is whether their interests are adequately represented by the parties to the action. And so if the only reason why chamber would be eligible to intervene as of right is that it includes auto dealers, but if you already have auto dealers in the case, how would you satisfy that fourth element for intervention as of right? So AMFRE also represents other interests, including fuel interests. Right, but fuel interests are not, I'm sorry, they're way too remote to come in under two. I respectfully disagree, Your Honor. I know you disagree, but I hope you can answer my question. And if you can't, that's all right, too. No, I'm happy to answer it. I mean, look, the question that you've asked is about how do we make a hierarchy of who should go first in intervention. And that's not how this has been teed up. It's not like you had in, the Arikake case is a good example I mentioned earlier. One party moved to intervene, and then you have other folks coming on later in the litigation. So that's just not the situation that we have. And so I don't think there's a principled basis for saying any of these proposed interveners should be considered above any of the others. And if I can return, push back on your premise, the Diamond Alternative case is a Section 209 case, and it's about whether fuel interests could go to court. And the court said that that was obvious, it was like a very easy economic point, and the California government says that, look, economics is not enough, and that may be true, but if it's concrete, which is the same inquiry as Article III standing, and if it's protected by some law, and all of the parties, including the fuel interests, referenced 209, this is on 3 ER 377 in the AFPM API brief, or motion to intervene, where they specifically invoke the protections of the uniform standards that the Clean Air Act imposes. Those uniform standards are accomplished by 209A. Thank you. Thank you, Your Honor. Your Honor, regardless of how you view the argument regarding the pending case in the D.C. Circuit, we should be focusing on the requirements of Rule 24A. Citizens for Balanced Use held that factors for intervention are guided primarily by practical considerations, such as the ones I've described with regard to Mr. Abbuti's declaration. In addition, that same case stands for the proposition, actually, Citizens states precisely that unless the government, quote, will undoubtedly make all the applicants' arguments, close quote, intervention should be granted. Lockyer is on all four points in this case. One other point, Your Honors, when you look at the ACT regulation, why did California promulgate that rule? It's because of emissions from trucks. Truckers are specifically the targets of the rule, even though they may not be the objects of the rule. It's emissions from trucks because California views those emissions as harmful. So truckers are more involved in this rule than perhaps any other party or applicants. Those emissions form the basis of the ACT rule. Without that, the ACT rule would not exist. Thank you. Thank you. The case of State of California versus United States of America, American Free Enterprise Chamber of Commerce, Western States Trucking Association and Construction Industry Air Quality Coalition is now submitted. Thank you, Ms. Segal, Mr. Bushwacker, and Mr. Hajij Antic. We appreciate your arguments today. We are adjourned. Thank you. All rise.
judges: MURGUIA, KOH, THOMAS